and may it please the Court, I'm Michael Taylor of Barry Taylor & Levesque in Manchester, Connecticut, on behalf of the Plaintiff Appellants. With me at Council table is my partner, Brendan Levesque. Your Honors, the decision of the District Court should be reversed because the tort of intentional spoliation of evidence as construed by the Connecticut Supreme Court is incompatible with the application of the litigation privilege to the same claim. In Connecticut, intentional spoliation of evidence requires proof of intentional bad faith destruction of evidence in the course of litigation. The litigation privilege precludes claims arising in the course of litigation. There is no logical space for those two concepts to coexist. Just, Counsel, what case in Connecticut are you referring to that stands for that proposition? I am referring primarily and will be referring primarily to the Supreme Court's decision in Rizzuto v. Davidson Ladders, Your Honor. That dealt with negligent spoliation as I understand it. And so my question to you is with the issue of intentional spoliation, is that something that we should certify to the Connecticut Supreme Court? Because I only saw one opinion by Judge Bright as a Superior Court judge on intentional spoliation. I did not see an opinion on intentional spoliation either from the appellate court or the Connecticut Supreme Court. So I have to disagree, Your Honor. Okay. Rizzuto, as I read it, is the case where the Connecticut Supreme Court first adopted the tort of intentional spoliation of evidence. And if you look at page 243 of that decision, the court is having done some analysis on whether or not it should do so, says, we therefore conclude that recognition of an independent cause of action for intentional spoliation of evidence is necessary to fulfill the public policy goals of the tort compensation system. So I do believe that that is an intentional spoliation case. That's the first time that the Connecticut Supreme Court adopted the tort of intentional spoliation. And there is no case that we are aware of. Well, but I'm talking about cases involving emotional negligence spoliation and the application of the litigation privilege. I believe, you know, I understand that intentional spoliation has been recognized as a tort, but I'm talking about the application of the privilege. So our position, Your Honor, is that the district court found that the claim of intentional spoliation was barred by the litigation privilege. And our argument is that it cannot be because they're inconsistent. And I can explain that at length, but that is the gist of our argument. With respect to the other claims, negligence spoliation, negligence, infliction of emotional distress, our argument is that to the extent that the facts necessary to prove those claims are the same facts as those necessary to prove the intentional spoliation claim, and that's the allegation in the complaint, that the defendants intentionally and in bad faith destroyed evidence in the context of litigation and that as a result, the plaintiffs are unable to make a prima facie case. If those are the facts alleged in support of any of the other claims, then those claims also should survive. But to be candid, the primary thrust of our argument is that the intentional spoliation claim has to survive because it cannot be that the litigation privilege could apply to it. How, how, what sense does it make to say that, that the, that spoliation occurred when one element of it is the frustration of the, of the ability to make out a prima facie case, and your client not only made out a prima facie case, but got a historically large judgment? That is accurate, Your Honor, but the judgment is on appeal. And one of our arguments of the claims that the defendants have made is an insufficiency of the evidence claim. It is possible, and we, we, we can't evaluate the merits here, but it is possible that if the defendants prevail on their evidentiary claim, that But your, but your position is that you did make out a prima facie case. Our position here, Your Honor? Your position has to be that you made out a prima facie case. You've got $42 million riding on that. Absolutely. In the other case, that is our position, but we could lose that claim, Your Honor. It is possible that we could be left with a reversal in the appellate court in, in the substantive case and, and be unable to make a prima facie claim because the appellate court says the evidence was insufficient. Okay. So let me, let me ask the question a different way, but I am, I'm interested in the line that Judge Jacobs is going down. What would the evidence that was purportedly destroyed do for the, your client's claims that the other evidence of the green bands did not? The testimonial evidence, the pictures, the fact that you could put somebody on the stand and depose them, what does the actual, like whatever you think it was that was destroyed, what would that do that what you don't already have? That would demonstrate that this product definitely came from the defendant's facility. So I saw that line in your brief and I was intrigued because that suggests that there's a question of degree, not that there is a frustration, that this would be the cherry on the top on top of a pile of other evidence. And what I don't think that that's the standard. So you can either explain to me why I'm wrong or why it's a, it's a, why the, why you think the, the, the element that you are obligated to prove varies according to a degree of proof as opposed to an ability to get it. And, and to be very clear, if, if a litigant intended to spoil evidence, there would be other problems that I think a court could handle. But that's not the question I think that we are being forced to grapple with in this case. Your Honor, I do not believe that you're wrong on the standard. I think that the Connecticut Supreme Court was very clear that the standard is destruction of evidence, not impairment of evidence, and the inability to, to make a prima facie case. My answer to that first is that, that that is a question on the merits and, and shouldn't be the determinative factor on a motion to dismiss. It is, given the uncertainty of the It is possible that the plaintiffs could prove this claim. It is certainly arguable that they could not. But I don't believe that that's a question before the Court right now. You have not addressed the issue of waiver. Can, do you want to take a moment to address that? Why wasn't the claim for negligent spoliation waived? So, Your Honor, I think that the, the direct answer to that is page A, page A-103 of the Plaintiff's Appendix, footnote 9 of the district court's decision, where the district court found that the claim was not waived. The district court found that the claim was not waived and decided it on the merits. And the defendants have not challenged on appeal the district court's decision to do so. And just so I understand your position, that there's no need to certify the issue of negligent spoliation to the Connecticut Supreme Court, because your position is if they've recognized intentional spoliation, there's no need to have them weigh in on whether negligent spoliation exists. Because I, I, I confused the two before. I, I think I understand, Your Honor. And, and, and we are confident that the Connecticut Supreme Court has recognized intentional spoliation. Certainly this court could certify if it believed that was appropriate. But we think that the analysis in Rizzuto and, and, and the, the basis for the court's decision to adopt intentional spoliation there negates any possibility of the application of the, the privilege to that claim. Right. So the big question for us then is whether or not the Dorfman standard addresses, or not the big question, an ancillary question is whether or not the Dorfman standard addresses all of the non-intentional spoliation claims. And obviously your first position, as I understand it, is that it doesn't. But that's not the hill you're going to die on. What you want us to do is to, is to make sure that the ability to make an intentional spoliation claim is not frustrated by an over-application of the litigation privilege. That's exactly correct, Your Honor. My colleagues are good. We'll, we'll hear from you on rebuttal. Thank you. May it please the Court. I'm James Rotundo of Dade Pitney, representing the defendants, Signify North America Corp, George Harp. I'm so sorry. I'm having a hard time hearing. If you don't mind making sure that that is bright and you're speaking into it. Is that better? Thank you so much. Is that better? Yes, sir. All right. The other defendants are George Harp, Damien Fritz, and Cynthia Burt. We raised a number of arguments in our brief. I'd like to start by focusing on the fact that the plaintiffs simply have failed to state a cognizable claim for spoliation under Connecticut law. The plaintiff's own complaint demonstrates there was no spoliation here. The plaintiff wasn't deprived of the ability to establish a prima facie case. Okay. That's a different argument, right? So you're saying that because they had sufficient evidence, they don't meet the standard. You seem to be backing away from the position that there is no tort of intentional spoliation that can't be frustrated by the litigation. We have not made the argument on this appeal, Your Honor, that there's a categorical bar for the tort of spoliation, categorical bar of the tort of spoliation and the litigation privilege. We're not making that claim on appeal. And so instead, your position is whether or not the Risotto standard of sufficient evidence exists. Yes, in large part. Our argument here, Your Honor, is that the plaintiffs have failed to raise a viable claim of intentional spoliation. So the claim that the plaintiffs are making to this Court is academic, especially because the plaintiffs failed to raise that argument, the argument they're making here to the district court, and they made binding judicial admissions indicating they couldn't meet the Risotto standard. Okay. Well, but the district court allowed them to later bring the claim and not waiver. What I'm more interested in, well, you can get to that later because it's your argument time, but I would have, I would be interested in having you explain to me what remedies would be available presuming or assuming that your client did intentionally destroy evidence in the midst of a litigation. What are the ways in which the judicial system could be made whole and your opposing? Risotto, I think, points that out, Your Honor, because in Risotto you did have a claim of intentional spoliation where the actual product involved in the incident was examined by the defense and then destroyed before the plaintiffs had the opportunity to look at it. So there was no evidence that the plaintiffs could present to establish probable case to prove their case. And so I think that's the best example, Your Honor. No, no, no. I don't know if that answers your question. That's not the question I asked. I'm sorry. The question I asked is what would, what remedies would exist assuming that your client actually did try to destroy evidence? I mean, that's not something courts can continent. So can you just lay out for me what would happen? I think there are a couple of things. One, the court could order that another inspection be required of the defendant's premises, the warehouse in Pennsylvania, so the plaintiffs and their experts go look at the entire warehouse and everything that was in the warehouse. And there would be a speculation, could there be an ethics charge filed against or a sanction filed against the attorneys? Like what could be done for not having a litigation? What about an order of preclusion? They could have ordered some sort of preclusion. The court here ruled that there was no destruction of evidence. Am I correct? You mean in the underlying case? In the underlying case. In the underlying case, Your Honor, my understanding is that the court ordered that the issue of spoliation was not going to be presented to the jury. Okay. So presumably then the judge was thinking it could be reserved for the case we're in now? I think that's correct, Your Honor. Okay. Thank you. Did I answer your question, Your Honor? Thank you. All right. The plaintiffs weren't deprived of their ability to establish a prima facie case because of this alleged scrubbing or concealment of boxes of green banding at the Mountaintop warehouse some three-plus years after the accident. Start, the plaintiffs received a $100 million verdict, the largest personal injury verdict in Connecticut history. Thus, there's no tension between the tort of spoliation and the litigation doctrine presented by the facts of this case. Plaintiff's argument here really is about a theoretical case which wasn't – it's not based on the complaint that was filed. In Rosutto, the Connecticut Supreme Court established the elements of an intentional spoliation claim. And most critically for purposes of this case, the Court indicated that one of the elements was that the plaintiff has to be unable to establish a prima facie case without the spoliated evidence. And in the course of framing this standard, the Court indicated that the underlying claim and the tort of spoliation are mutually inconsistent and that a plaintiff who has sufficient evidence to present his or her claim to the jury is unable to state a claim for spoliation. So here we not only have a claim – Your adversary is arguing that there's an appeal pending that's going to decide  And that's not on the issue of whether enough evidence was presented to support that. Not on the issue of whether there was green banding. That's not – that's not the issue on appeal. And the appeal, Your Honor, we submit, is not – is not relevant to the issue that – that – It's a sufficiency of evidence appeal. Am I correct? Well, that's what your adversary says. The – the – And I think you can say that, too. The evidence has to be sufficient to establish a prima facie case, not sufficient to allow somebody to win. It just has to be sufficient to get the case to the jury. And – and here, the evidence – I think it's important that the evidence that the plaintiffs would have gotten if there had been none of this so-called scrubbing or concealment or spoliation would have been photographs of boxes in the mountaintop warehouse with green banding on it. That's what they would have had. They wouldn't have come away with boxes with green banding, just photographs. And they had it. They had a photograph of a trash can with green banding in it from their inspection, and then they had five photographs of boxes with green banding from the inspection of the defendant's expert. So the only evidence that they would have had but for the so-called scrubbing was photographs of green banding. And that's exactly what they had. And that's why I've argued here in our – in our brief that there was no spoliation. There was also evidence, as put it out in the – in the trial court's opinion on the motion for remitter, that in addition to photographs, there was evidence submitted to the jury in a form of examination, cross-examination of witnesses regarding green banding both at mountaintop and at the Rexall warehouse. And there were remarks in closing argument. The argument about possible reversal we submit doesn't change the dynamics. It doesn't change the analysis at all. Because the – first, the plaintiffs still have the photographs of the green banding. To the extent that's relevant, they'd be allowed to introduce them. Moreover, the level of proof required to establish a prima facie case is minimal and doesn't reach the level required to support a jury verdict. So the fact that the appellate court may reverse on one or more of the arguments – Sotomayor What's your client's position on appeal in the other case, that a prima facie case was made out sufficient to get to the jury? Because if so, I would be surprised. Carvin I would be surprised, too, Your Honor. I'm not familiar in detail with all the arguments. I know that one of the arguments is that there was no duty. There was no duty. There was no duty to the plaintiff. There was no duty to the jury. And so I would be surprised if the plaintiffs were not to do what they're claiming. And there are also evidentiary arguments that are related to the admission of expert testimony, the exclusion of expert testimony, and so on. Sotomayor Was the issue at the trial below where your opponents won, was the issue of the missing evidence discussed in front of the jury? I know that foliation was not brought to the jury because the court found that there was this one photograph that had the green band that had been preserved. But was it the subject of argument in closing argument? Carvin I can't speak to whether it was the subject of argument in closing argument. What I can speak to is it was the subject of vigorous cross-examination. Sotomayor So the jury at least heard evidence of foliation? Carvin The jury heard evidence. Sotomayor If not instructed on? Carvin What the jury heard evidence on was that three witnesses testified that there had never been green banding at the Mountaintop Warehouse before or after. And the jury was shown photographs of the green banding at the Mountaintop Warehouse in January 2021. And the witnesses, those three witnesses were cross-examined on the presence of the green banding in those photographs. Sotomayor So if you, if your client is successful on appeal and there's a new trial, how are they not harmed then if we accept your position that they can't make a prima facie case? Because then you would certainly argue below no foliation. Carvin They can't make a, they can't make, I'm sorry, Your Honor, I'm not making myself clear. They, they, their ability to establish a prima facie case is what allowed them to get to the jury in the first place, whether we agreed with it or not. So they weren't deprived of that opportunity. And if it's reversed, they've already gone through a trial and, and presumably the court's not going to enter some re-judgment based on, you know, some, some arguments that haven't been advanced to date. Sotomayor Well, new arguments can be presented. I mean, the point is they won't have been successful. They have to start all over. So your argument that they can't make a prima facie case because they were successful goes away. Carvin I don't think so, Your Honor, because I think that, that the tort of the plaintiff, the plaintiff's argument about the standard, they said that the two claims are inconsistent. They're mutually exclusive. The plaintiffs presented their argument in the main case and argued that, and successfully argued, that there was negligence on the part of, of signifiers. Sotomayor Do you agree with your opponents that there is no need to certify any question to the Connecticut Supreme Court on whether the litigation privilege applies to either negligent or intentional spoliation? Carvin I agree, Your Honor, that certification wouldn't be appropriate, but I come at it from a different angle. And this Court will consider certification only when they're going to consider certifying an outcome determinant of question. And here, the issue of whether there was intentional spoliation that should be considered as a categorical exception to the litigation immunity doctrine is a theoretical question under the facts of this case, and therefore, it wouldn't be appropriate to certify. Sotomayor Well, thank you. I appreciate it. Carvin Thank you. Any further questions? If not, we submit that. Sotomayor We've got, you've got two minutes, and it would help me at least if you started with the difference, the difference that your colleague is making about the ability to go to trial versus the ability to prove your case and how that relates to footnote 13 of RISOTA. Carvin Certainly, Your Honor, the point is, the standard that the Connecticut Supreme Court set was that the plaintiff must not be able to make a prima facie case. But in the face of an appeal, we don't know what's going to happen. If there's a new trial, I think as Judge Kahn just suggested, it's possible that there is different evidence. It's possible that there's different claims. And so this claim remains potentially viable, regardless of what we think about the strength. And that's sort of the problem, Your Honor. The defendant's position is almost entirely about the sufficiency of the evidence. But the district court did not decide that the evidence was insufficient here. The district court decided that the litigation privilege precludes all claims. Kagan Right. And they seem to have won that. So you can tell your client, because they're conceding that. Carvin I'll take it, Your Honor. Kagan So, right. I mean, they seem to have been backing away from that. I thought that that was the big argument of the day, and that's gotten clarified. So now the question for us is not whether or not the litigation privilege overwhelms the tort of intentional spoliation, but whether or not you get the protection of the intentional spoliation, because you have had sufficient evidence to at least make a prima facie case, and whether or not it is our ability to extend that, not to a prima facie case, but to the possibility of prevailing overall. And whether or not So if you could start there, or tell me that I'm misreading the footnote 13 in Rizzuto, you're welcome to tell me that I don't actually understand the issue. But if I do, then you need to explain to me why us, as opposed to the Connecticut Supreme Court, needs to be the one that says, wait, Rizzuto didn't consider all of the circumstances in which we might want the litigation privilege to apply. Here is another circumstance, as opposed to just the prima facie case. We would not oppose a transfer if this Court believes that transfer is appropriate. No, no. Certification. Certification on transfer. Excuse me. Certification. I apologize. I don't think that the Court in Rizzuto considered the question of the litigation privilege. I think the Court's analysis in Rizzuto makes it completely clear that the litigation privilege couldn't apply. They considered the availability of a remedy that That's not where we are. Tell me what you think footnote 13 in Rizzuto means. We declined to require the plaintiff to prove some probability of success in the underlying litigation. We know that the jurisdictions that require such a showing do not also require the plaintiff to establish that the defendant's intentional spoliation was so egregious that the plaintiff was unable to present his case to the fact finder. It seems to me that Rizzuto is, and tell me if I'm wrong, is specifically contemplating a scenario in which they don't make your prima facie case very hard, but in exchange for that, you only get this tort of intentional spoliation up and so far as it gets to the jury. Is that a misread of 13? And if so, or is it something it hasn't contemplated so we need to certify? I don't believe it's a misread. I think what the Court is doing there is distinguishing its construction of the tort from other States' construction of the tort and requiring that the plaintiff be unable to make a prima facie case. And our response to the defendant's point is we still don't know if that will happen in the future because of the pendency of the appeal. But I think Your Honor has, understands 13 as we understand 13. The Court is saying some States allow just an impairment of the plaintiff's claim, but here, because of the way we're going to construct this, we are going to require that the plaintiff be unable to make a prima facie case. In order for us to evaluate that argument, would we not have to know what the appellate issues are before the Connecticut Supreme Court with respect to the underlying case? Because if those issues have nothing to do with signals, a packing of these light bulbs or whatever it is, then it couldn't have an effect on the prima facie case insofar as the specific spoliation you allege is concerned. I don't know if I made that plain. I'm not sure I had that plain. I believe it was plain, Your Honor. And to the extent that there's a possibility of a new trial, then the issue of getting to the jury is out the window because now you're back at trial and there's no way to predict what will happen. That's a claim in the appeal. To answer your question directly, I think the claims in that appeal would be relevant and I think this Court could look at them, but if it thought that it shouldn't and wanted to certify to the Supreme Court because they might have a better  that could be appropriate. Thank you. Any further questions?